IN THE UNITED STATES DISTRICT COURT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| JOHN DOE<br><br>Plaintiff,<br>v.<br><br>MCDONOGH SCHOOL, INCORPORATED<br>8600 McDonogh Road<br>Owings Mills, MD 21117<br><br>Serve: Jennifer L. Curry<br>100 Light Street, 19th Floor<br>Baltimore, MD 21202<br><br>Defendant. | ) | Civil Action No. ____________ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Overview of the Case

1. Plaintiff John Doe ("plaintiff") here sues defendant McDonogh School, Incorporated ("McDonogh" or "school") for substantial monetary damages arising from the serious harms and injuries he suffered when he was a high school boarding student at McDonogh (1978-1982). During plaintiff's years at McDonogh, the school's Dean of Students was Alvin J. Levy (deceased); Robert E. Creed (deceased) served on McDonogh's faculty. As the school later acknowledged, its administration and board knew that both Levy and Creed had been abusing McDonogh students for years prior to plaintiff's enrollment there in 1978. Rather than removing these perpetrators and protecting plaintiff (and others), the school covered up this knowledge and allowed and enabled Levy and Creed to abuse plaintiff. McDonogh breached its obligation to plaintiff to protect him from harm.

## Parties

2. Plaintiff JOHN DOE is a citizen of the State of Arizona.

3. Defendant McDonogh School, Incorporated is a private, coed pre-K-12 school in the State of Maryland (a Maryland "citizen"), located (residing) at 8600 McDonogh Road, Owings Mills, MD 21117.

## Jurisdiction and Venue

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this case because there is diversity of citizenship between plaintiff (Arizona) and defendant (Maryland), and the amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391(b)(1) & (2). Venue is proper in this Court both because defendant resides in this district and because a substantial part of the events and omissions giving rise to this case occurred in this district.

## Statement of Facts

### Plaintiff's attendance and residence at McDonogh and the abuse he suffered there

5. Plaintiff began attending and boarding at McDonogh as a young 9th grade student in 1978, and he remained there for the following four years of high school.

6. As a boarding student, plaintiff was in the care and custody and subject to the authority of the school twenty-four hours of every school day. Plaintiff was entitled to the school's protection, and the school had a duty to provide it.

7. During plaintiff's attendance at McDonogh, faculty members Creed and Levy sexually abused plaintiff on multiple occasions on the school's property.

8. The sexual abuse Creed and Levy inflicted upon plaintiff included, but was not limited to, groping, inappropriate touching, fondling, and indecent exposure.

9. Both Creed and Levy's predatory sexual conduct was known to and discussed among McDonogh board members, administrators, and faculty. McDonogh board members, administrators, and faculty also knew or should have known of Creed and Levy's predatory sexual conduct over the years plaintiff was a student at the school and boarding there.

10. Levy's position of Dean of Students was a senior position in McDonogh's administrative structure. By definition and design, holding the position of Dean of Students gave Levy significant power and authority over McDonogh's students' lives and their experience at McDonogh. This power is especially strong and its abuse exponentially felt in the case of students, like plaintiff, who boarded at the school.

11. By force and over plaintiff's clear resistance, Creed victimized plaintiff, a young student. On multiple separate occasions over the years, Creed and Levy each sexually assaulted plaintiff and violated his bodily integrity.[1]

12. Creed and Levy's sexual assaults violated plaintiff's personhood, the integrity of his body, and his sense and ability to exercise control and agency over his life and body.

13. McDonogh knew of the harm that each Creed and Levy could cause because the school knew of their conduct prior to plaintiff's enrollment in 1978. Despite this knowledge, McDonogh's board, administration, and faculty took no action to remove or restrain either Creed or Levy. McDonogh did not do the most obvious thing it could have and should have done: remove

[1] Maryland's recent Child's Victim Act (effective October 1, 2023) abolishes the statute of limitations for the claim stated in this complaint. The Supreme Court of Maryland recently upheld the constitutionality of that Act.

them from the school. Instead of cutting the cancer out, the school, board members, administrators, and teachers, chose – and it was a choice – silence and inaction (complicity). The school and its legally responsible officers and agents were confronted with the blunt and ugly fact that McDonogh was and had been inhabited and infected by active, aggressive, repetitive sexual predators (Levy and Creed) whose prey of choice was young male McDonogh students. McDonogh's collective silence and inaction enabled Creed and Levy's horrific conduct to continue. Plaintiff became the next involuntary recipient of each Creed and Levy's abuses and exploitation.

Plaintiff's harms and injuries

14. Plaintiff suffered immediate harm and injury as a result of Creed and Levy's attacks and McDonogh's inaction and complicity. These injuries are ongoing and serious. The direct and proximate cause of these injuries are the actions of Creed and of Levy, and the actions, inactions, and negligence of McDonogh. McDonogh knew that its faculty members had been engaging in wrongful student-destroying sexual misconduct.

15. Plaintiff suffered severe emotional distress during and after these school years. Plaintiff's time at McDonogh was a time of shame, horror, fear, abuse and intimidation.

16. The aftermath of this abuse led plaintiff down a path of emotional turmoil, causing him to suffer severe emotional distress.

17. Long after plaintiff left the school in 1982, McDonogh acknowledged both Creed and Levy's respective histories of sexually abusing students and the school's failure to act on information it had at the time of their conduct, including when plaintiff was a student.

McDonogh's highly belated disclosures

18. Decades after plaintiff left the school, on November 7, 2016, McDonogh informed alumni and others that in 1985 Creed was found guilty of charges of sexual abuse after a McDonogh alumnus, who had been sexually abused when he attended McDonogh in the early 1980s, pressed charges against him.

19. McDonogh's November 7, 2016 letter also reported that Levy, the school's long time former Dean of Students who had sexually attacked and abused plaintiff, had previously been indicted on charges of sexual abuse. While Levy died prior to the disposition of the charges against him, the school subsequently reported that Levy had no intention to contest the charges.

20. Though Creed was charged in 1985 and Levy's indictment was issued in 1992, decades prior to its letter to alumni, McDonogh has not explained its truly extraordinary and plainly calculated delay in reporting the "news" of Creed's charges or Levy's indictment to potentially affected parties.

21. McDonogh's 2016 letter stated that McDonogh, for its part, intended to conduct an outside investigation of matters related to Creed and Levy. Almost three years later, this investigation was completed. The investigation included confirmation of what had been long known in and around the school, including by board members, administrators, and faculty, regarding Creed and Levy's sexually abusive actions. The investigation determined that "Mr. Levy and Mr. Creed engaged in sexual misconduct with 19 [known] male students—*Mr. Levy from the 1940s through the 1980s and Mr. Creed from the late 1970s to the mid-1980s*." (Emphasis added.)

22. As the investigative report makes clear, the sexual misconduct was known to responsible McDonogh officials and McDonogh took no action: "some of these allegations were

reported to the School at the time, and it is now clear from the completed investigation that then-active School Administration officials and members of the Board of Trustees failed to take appropriate action when these allegations were first reported more than three decades ago."

23. The school was aware that Levy had been engaged in sexual misconduct with male students for more than three decades before he engaged in sexual misconduct with plaintiff and that Creed had been doing the same for years prior to Creed's abuse of plaintiff.

24. McDonogh acted with reckless, if not deliberate, indifference toward plaintiff and failed to act to protect plaintiff from harm notwithstanding its knowledge of the risk that Creed and Levy's presence on campus and in dorm rooms presented to plaintiff (and others). This failure to act was a breach of the school's duties and obligations to plaintiff. With calculation and deliberate intent, McDonogh strategically delayed for twenty-four years the disclosure of Levy's indictment, thirty-one years to disclose Creed's guilty charges, and then delayed for three years the completion/release of its investigative report.[2]

<u>Claim for Relief – Negligence</u>

25. Plaintiff here adopts and incorporates by reference every fact and allegation contained in ¶¶ 1-24.

26. Plaintiff was a student at McDonogh and boarded there. McDonogh owed plaintiff a duty of reasonable care and protection during his attendance there. McDonogh breached its duty

---

[2] McDonogh's explanations for these delays will be a subject for future discovery. Plaintiff strongly suspects that the delays were intentional and strategically calculated to create, if possible, statute of limitations problems for plaintiff (and other similarly wronged McDonogh students). *But see* n. 1 supra (Maryland Child Victim's Act bars limitations as a defense here).

of care and protection and, as a direct result of that breach, plaintiff suffered and continues to suffer great harm and damage, as detailed above.

27. McDonogh breached its duty of care to plaintiff by: negligently hiring each Creed and Levy, including failing to properly and adequately vet each of them and their histories prior to their hiring; negligently failing to oversee, monitor, supervise and discipline Creed or Levy after their respective hiring; failing to investigate credible and repeated statements, allegations and reports of suspected incidents of each Creed and Levy's abusive improper sexual conduct with McDonogh students; failing to investigate allegations and reports that these faculty members were sexually abusing the school's students and had been doing so for decades; failing to act upon reports and information that the school, including its board members, administrators, and faculty, had about Creed and Levy's respective histories of sexual abuse of and improper "relationships" with McDonogh students; failing to limit or prevent Creed or Levy's access to plaintiff; failing to take disciplinary or corrective action with respect to Creed or to Levy despite the school's knowledge of each's actions and misconduct; failing to report what the school knew or had good reason to strongly suspect about Creed or Levy's sexually abusive actions to appropriate law enforcement authorities, thereby allowing Creed's and Levy's misconduct to continue and at plaintiff's expense; by allowing Creed and Levy to be a continuous threat to plaintiff's bodily integrity, health and safety; by failing to warn plaintiff and his parents of Creed's or of Levy's sexual proclivities; by failing to promptly conduct a post-indictment investigation of Creed or of Levy; by failing, upon notice of Creed's conduct or of Levy's conduct, to remove them from any and all positions and responsibilities at McDonogh and barring each of them from the campus forever.

28. McDonogh's actions and inactions breached the school's duty of care to plaintiff. McDonogh was required to act with the degree of reasonable care due as a private school that provided boarding and where plaintiff (and others) boarded. Here, McDonogh acted with reckless, if not deliberate, indifference. McDonogh's multiple breaches of its duty created the foreseeable risk that plaintiff would suffer harm and damage. Plaintiff was a foreseeable Creed victim and a foreseeable Levy victim and McDonogh failed to take reasonable actions under the circumstances to prevent either of their access to plaintiff. The direct and proximate consequence and result of McDonogh's breaches of duty and failures to act was that plaintiff became a victim to both Creed and to Levy. Creed and Levy's sexual abuses of plaintiff and all the resulting harms and injuries to plaintiff were the foreseeable, if not inevitable, proximate result and consequence of McDonogh's numerous failures and breaches of its legal duties.

29. As a direct and proximate result of McDonogh's negligence and breaches of duty of reasonable care and treatment of plaintiff, plaintiff sustained and suffered physical, emotional, and psychological injuries, emotional pain, suffering and distress. Plaintiff's injuries began in his student years at McDonogh (1978-82) and have been and are ongoing and continuous to date. Plaintiff has sought care and treatment and may continue to do so. His injuries are serious, ongoing, and will continue for the balance of his life.

## Prayers for Relief

WHEREFORE, based upon the facts to be proven at trial, plaintiff seeks substantial monetary relief, in an amount to be determined by the jury, plus available fees, interest and costs, and such other further and additional relief as the Court determines is just and proper.

Demand for Jury Trial

Plaintiff hereby respectfully demands a trial by jury.

Respectfully submitted,

*/s/ Ari S. Casper*

Ari S. Casper (Bar # 14512)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(p) 410-989-5097
(f) 410-630-7776
(e) acasper@casperfirm.com
Attorney for Plaintiff